# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE, nongovernmental organization; and ADAM SHAPIRO, ANAS SHAWKAT MUSEITEF, HAIDAR DARWISH, and MOHAMMED AHMED ABUJAYYAB, | Case No.                    a |
| | |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| | |
| v. | |
| | |
| DEPARTMENT OF HOMELAND SECURITY, a federal agency; and DEPARTMENT OF STATE, a federal agency, | |
| | |
| Defendants. | |

_____

| | |
|---|---|
| Huwaida Arraf (NY Bar 4707220) | Samuel W. Jarjour (IN Bar 15468-02) |
| 1394 E. Jefferson Ave. | 7824 Coldwater Road |
| Detroit, MI 48207 | Fort Wayne, IN 46825 |
| Tel: 313.567-6170 | Tel: (260) 420-2333 |
| Email: huwaida.arraf@gmail.com | Fax: (260) 420-2335 |
| *Attorney for Plaintiffs* | Email: sam@jarjourlaw.com |
| | *Attorney for Plaintiffs* |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.     The AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE ("ADC"), ADAM SHAPIRO, ANAS SHAWKAT MUSEITEF, and HAIDAR DARWISH bring this action for declaratory and injunctive relief against the UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") and the UNITED STATES DEPARTMENT OF STATE ("DOS") (collectively, "Defendants") pursuant to the judicial review provision of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

2.     Actions taken by Defendants related to the admission of the State of Israel into the U.S. Visa Waiver Program ("VWP"), 8 U.S.C. § 1187, have established discriminatory rules and procedures against United States citizens to participate in the program when traveling to Israel and thus violate the VWP rule of reciprocity and constitutional guarantees of equality.

3.     Specifically, Defendants took arbitrary and capricious action that violates the final rules of the VWP when, on July 19, 2023, they signed a Memorandum of Understanding ("MOU") with Israel that established multiple classes of U.S. citizens based on ethnic and national identities, extended the deadline for Israel's compliance with the VWP, and agreed that the provisions of the MOU would be the measures implemented under the VWP once Defendant DHS admitted Israel into the program. *See* Exh. 1, MOU (unofficial copy).

4.      According to the VWP statute, countries are required to provide to U.S. citizens treatment reciprocal to that received by their citizens upon entry into the United States,  *see* 8 U.S. Code § 1187(a)(2)(A), with the exception of the those falling under the Visa Waiver Program Improvement and Terrorist Prevention Act of 2015, Pub. L. No. 114-113, 129 Stat. 2242 (2015).

5.      The requirement for "reciprocal privileges" described under 8 U.S.C.§ 1187(a)(2)(A), makes the extension of reciprocity a condition of eligibility for entry into the VWP. This rule is so fundamental to the VWP that it is the only reference to U.S. citizens and nationals in the statute.

6.      The U.S. government does not maintain differential treatment for entry or conditions for travel to territories under its control for nationals of other countries admitted to the VWP.

7.      Furthermore, every other country that has been admitted to the VWP treats all U.S. citizens exactly the same, without imposing requirements, regulations, or restrictions based on national or ethnic identities, and no other country restricts U.S. citizens access to any territory under its control based on their national or ethnic identities, as Defendants are permitting Israel to do by way of the MOU.

8.      On July 19, 2023, Defendants signed a MOU with the State of Israel—*Memorandum of Understanding between The Government of the State of Israel And The Government of the United States of America On Extension of Reciprocal*

*Privileges and the Visa Waiver Program*—that establishes different classes of U.S. citizens subject to different treatment by the State of Israel. In particular, the MOU singled out various categories of Palestinian-Americans based on their "residency" within the occupied Palestinian territory (oPt)--i.e. the West Bank, not including East Jerusalem, and the Gaza Strip) to which different rules and regulations would apply.[1]

9.      Specifically, through the aforementioned MOU, Defendants permit the Government of Israel to apply differential treatment to U.S. citizens who are "residents" of the occupied West Bank, not including East Jerusalem; U.S. citizens who are residents of the occupied Gaza Strip; U.S. citizens who are registered on the PPR but not resident in either the West Bank or Gaza Strip; and U.S. citizens who are not of Palestinian nationality.

10.      Defendants' decision to enter into an agreement that allows the Government of Israel to create different classes of U.S. citizens and treat them disparately in a way that is not reciprocal with how the U.S. treats Israeli citizens,

---

[1] For the purposes of the MOU, "residency" refers to those Palestinian-Americans who are U.S. citizens and who are listed on the Palestinian population registry ("PPR"), either assigned to the West Bank or to Gaza. In the MOU, they are referred to as "U.S. RWB" (U.S. citizens resident of the West Bank) and "U.S. RG" (U.S. citizens resident of Gaza), regardless of whether or not they live or intend to live in the oPt. Thus, a status of "U.S. RWB" includes those Palestinian-Americans who reside in the U.S. as well as those who reside in the West Bank; and" U.S. RG" status includes those Palestinian-Americans who reside in the U.S. and those who reside in Gaza.

effectively creating a rule regarding reciprocity that is different from the final rule of the VWP statute – is arbitrary, capricious, and a violation of the plain text of 8 U.S.C. § 1187(a)(2)(A).

11.    Plaintiffs seek an order holding unlawful and setting aside the MOU and any subsequent accommodations made by Defendants per Israel's discriminatory measures for "reciprocal privileges" and issuing an injunction preventing Defendants from making a determination regarding Israel's eligibility for the VWP on the basis of any of the terms of the MOU, until the U.S. receives from Israel guarantees of full and equal reciprocal privileges for all U.S. citizens without distinction.

12.    Plaintiffs further seek an order declaring that Defendants violated 8 U.S. Code § 1187(a)(2)(A) by agreeing to provisions that patently discriminate against U.S. citizens.

13.    Finally, Plaintiff seeks an order awarding ADC costs of litigation, including reasonable attorneys' fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

## JURISDICTION AND VENUE

14.    This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. § 1391(e) because Defendants are agencies of the United States.

15.   This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under federal law.

16.   This Court has further jurisdiction over this lawsuit pursuant to 5 U.S.C. §§ 701, *et seq.* (APA judicial review), as Plaintiffs challenge a final agency action, judicially reviewable within the meaning of the APA, 5 U.S.C. §§ 704, 706. The MOU constitutes  final agency action with regard to the treatment of U.S. citizens and has been implemented since July 20, 2023. The next step  is for DHS to certify and list Israel in the VWP, an action that has been determined to be outside the scope of judicial review under APA (*see*, 86 FED. REG. 54030 (September 30, 2021). Thus, the MOU represents the final agency action concerning U.S. citizens that is eligible for judicial review.

17.   Venue is appropriate under 28 U.S.C. § 1391(e) because Defendants are agencies of the United States, no real property is involved in the action, and one or more Plaintiffs reside in the jurisdiction. Specifically, Plaintiff Adam Shapiro is a resident of the State of Michigan, as are many ofADC's members who are affected by the MOU.

## PARTIES

18.   Plaintiff        AMERICAN-ARAB        ANTI-DISCRIMINATION COMMITTEE ("ADC") is a non-profit organization, duly registered under the laws

of the District of Columbia, and is a civil rights organization committed to defending the rights of people of Arab descent. Among its members are Palestinian-Americans (U.S. citizens), including those who are registered on the PPR for the West Bank and Gaza Strip.

19.    ADC and its members are harmed by the action that Defendants took in agreeing to the MOU with the Government of Israel. ADC members have experienced and will continue to suffer discrimination, differential and disparate treatment, and profiling on the basis of their national and ethnic identities. Unless the relief requested is granted, ADC and its members will continue to be adversely affected and irreparably harmed by the continued discriminatory and non-reciprocal treatment that Defendants have authorized.

20.    Plaintiff ADAM SHAPIRO is a non-Palestinian U.S. citizen, resident of Macomb Township in the County of Macomb, State of Michigan, who has previously traveled to Israel and the oPt. According to the MOU, he is of the class of U.S. citizens that is not subject to restrictions imposed on classes of Palestinian-Americans and therefore is separate and not equal to them.

21.    Plaintiff ANAS SHAWKAT MUSEITEF is a Palestinian-American, U.S. citizen with a West Bank ID, residing in Watsonville, in the County of Santa Cruz, in the State of California. According to the MOU, he is a U.S. RWB. He has

traveled to Israel since the signing of the MOU and has suffered discrimination and maltreatment by Israeli authorities.

22.   Plaintiff HAIDAR DARWISH is a Palestinian-American, U.S. citizen with a West Bank ID, residing in Yonkers, in the County of Westchester, in the State of New York. According to the MOU, he is a U.S. RWB. He has traveled to Israel since the signing of the MOU and has suffered discrimination and maltreatment by Israeli authorities.

23.   Plaintiff MOHAMMED AHMED ABUJAYYAB is a Palestinian-American, U.S. citizen with a Gaza ID, residing in Los Angeles in the County of Los Angeles, in the State of California. According to the MOU, he is a U.S. RG. He traveled to Israel shortly after the signing of the MOU and was turned away at Ben Gurion Airport on account of his Gaza ID.

24.   Defendant DEPARTMENT OF HOMELAND SECURITY ("DHS") is an executive agency within the meaning of 5 U.S.C. § 551, responsible for administering federal immigration laws. The DHS is the agency authorized to make the final determination regarding the eligibility and qualification of another country to enter the VWP and has a duty under VWP to ensure "reciprocal privileges" for U.S. citizens without conditions, as a basis for admission of another country into the VWP, regardless of other qualifying factors.

25.   Defendant DEPARTMENT OF STATE ("DOS") is an agency within the meaning of 5 U.S.C. § 551. The DOS is the agency responsible for making recommendations to DHS as to the eligibility of a country to participate in the VWP, per the criteria set forth in the governing statute. The DOS also makes a final recommendation to the DHS for admittance to the VWP. DOS does not have the authority to redefine "reciprocal privileges" for U.S. citizens.

## LEGAL BACKGROUND

### U.S. Visa Waiver Program

26.   In 1986, Congress passed legislation to create the VWP with the aim of facilitating tourism and short-term business visits to the U.S. for nonimmigrant visas. Since then, Congress has passed additional legislation to enhance the security provisions of the program toward advancing the national security of the U.S. *See* Pub. L. No. 114-113, 129 Stat. 2242 (2015).

27.   A foreign country is eligible to participate in the VWP if it meets a number of criteria. Of these criteria, only one references U.S. citizens – that the country in consideration "extends (or agrees to extend) … reciprocal privileges to citizens and nationals of the United States" (8 U.S. Code § 1187(a)(2)(A)).

28.   Under the terms of the VWP, "reciprocal privileges" means that, just as the U.S. allows a country's nationals to enter its borders without distinction or different procedures between them, and with access to all the territory controlled by

the U.S., so too will that country allow a U.S. citizen to enter its borders without distinction or different procedures between them, and with access to all the territory controlled by that country.

## Judicial Review Under the APA

29.   The APA governs judicial review of agency decisions under the VWP with the exception of updating the list of VWP countries, where action by the Secretary of State is not eligible for review under the APA (*Federal Register*, vol. 86, No. 187, September 30, 2021). The APA provides a right of judicial review to persons "adversely affected or aggrieved by an agency action within the meaning of a relevant statute[.]" 5 U.S.C. § 702. The scope of this review is limited to "final agency action[s] for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

30.   The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). Although finality is not defined in the APA, the Supreme Court has held that an agency action is considered "final" when it marks the "consummation of the agency's decisionmaking process" and the action is one by which "rights or obligations have been determined or from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

31.   The MOU marks the final acceptance of the measures that Israel will take to extend reciprocal privileges to U.S. citizens in order to meet the requirements of entry into the VWP, and is thus a final agency action subject to review under APA section 702. *Id.* at 178.

32.   According to the MOU, Israel's implementation of its obligations under the agreement will result in the country being accepted into the VWP.

33.   Under the APA, a reviewing court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Arbitrary and capricious review under the APA requires a court to determine "whether the agency considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001) (internal quotations omitted).

## FACTUAL BACKGROUND

34.   On July 20, 2023, at that day's State Department briefing following the announcement of the MOU, State Department spokesman Matt Miller was asked about the issue of reciprocity, to which he responded, "We seek equal treatment

regardless of national origin, religion, or ethnicity for all U.S. citizens, including those who are in Gaza."[2]

35.   On January 30, 2023, then U.S. Ambassador to Israel, Tom Nides, released a video recognizing that Israel had met the 3% threshold on visa denial rate to be eligible for the VWP, and outlined what further steps were necessary. He explained, "Reciprocity is a requirement…So what do I mean by reciprocity? It means Israelis coming to the U.S. as tourists can enter the U.S.? Yes, without visas? Yes, it also means any American, regardless of their national origin, religion or ethnicity will be able to travel to Israel…As we like to say at the Embassy, 'Blue is Blue' [in reference to the color of the U.S. passport]."[3] According to one report, Ambassador Nides said that the U.S. "would only admit Jerusalem into the VWP if it signs a Memorandum of Understanding codifying the reciprocity commitment with 'snapback' provisions if the agreement is violated."[4]

36.   According to public reports and reports received by the ADC, Palestinian-Americans on the PPR have experienced harassment and discrimination

---

[2] Matthew Miller, *Department Press Briefing - July 20, 2023,* U.S. Dept. State, https://www.state.gov/briefings/department-press-briefing-july-20-2023/#post-462726-Israel.

[3] @USAmbIsrael, Twitter.com (Jan. 30, 2023), https://twitter.com/USAmbIsrael/status/1619984222936260610.

[4] Jacob Magid, *Israel to Test Eased Entry for Palestinian-Americans Before Landing U.S. Visa Waiver*, Times of Israel (June 7, 2023), *available at*: https://www.timesofisrael.com/israel-readies-to-ease-palestinian-american-travel-in-move-vital-for-us-visa-waiver/.

upon entry vis-a-vis Israeli-controlled entry points. There have been cases where Palestinian-Americans - particularly those that are residents of the West Bank, not including East Jerusalem - have not received visas on arrival, but rather have been told to apply for a permit through the COGAT (Coordinator of Government Activities in the Territories) after arrival. It is even more difficult for Palestinian-American residents of Gaza who have been outright rejected or, in cases of acceptance, told that they cannot enter Gaza. Moreover, Palestinian-Americans with visas or even permits granted through the COGAT have been told that they are not allowed to enter certain checkpoints either as a driver or as a passenger of a vehicle, and that they must "walk through." In other cases, they have been denied entry through certain checkpoints altogether that other U.S. citizens are able to use. Palestinian-Americans are also unable to enjoy what other U.S. citizens would enjoy, or what Israelis would "reciprocally" enjoy upon entering the U.S. Tourists are able to drive in Israel with a valid driver's license for a period of one year from the date of entry. However, there have been reports that Palestinian-Americans are not allowed to rent or drive vehicles with Israeli license plates.

37.    Overall, "blue is blue" must mean something for U.S. citizens. The recent developments on Israel's possible entry into the VWP, based on the MOU, makes a mockery of the statement, in particular, whether the DHS and DOS is allowing another country to discriminate against U.S. citizens.

38.   On July 20, 2023, Israel began implementing the MOU, but did not permit U.S. RG to enter via Ben Gurion Airport and participate in the trial period. U.S. citizens with Gaza IDs were turned away. Israel subsequently announced it would permit U.S. citizens with Gaza ID to enter at Ben Gurion Airport, but only starting on September 11, 2023. Other amendments were made to regulations governing Palestinian-Americans between July 20 and September 12, 2023, demonstrating that the MOU creates a new rule regarding reciprocal privileges and cedes authority to Israel to arbitrarily determine what reciprocity will consist of at any time.

39.   On July 20, 2023, the first day Israel implemented the terms of the MOU, Plaintiff ANAS SHAWKAT MUSEITEF entered Israel via Ben Gurion Airport, and received a B2 visa in his U.S. passport. On July 23, 2023, together with his three children (ages 4, 8 and 11) – all U.S. citizens – MUSEITEF tried to return to Ben Gurion Airport from the West Bank. He attempted to cross the Rantis military checkpoint, but when Israeli soldiers inspected his U.S. passport and saw the birthplace on his passport listed as the West Bank, they asked MUSEITEF if he had a West Bank ID. He said that he did, and once the Israeli soldiers looked it up in their system, they told him that he should not have been issued a B2 visa because he has a Palestinian ID. MUSEITEF was unable to speak to a supervisor, as there was no higher authority stationed at the checkpoint and the soldiers seemed to be

corresponding with other supervisors via WhatsApp. MUSEITEF was detained by the Israeli soldiers at the checkpoint and not allowed to cross into Israel. From about 7:00 p.m. to 2:00 a.m., he was forced to wait and remain in his car, with the soldiers holding his U.S. passport. Around 10:30 p.m., when it was clear he was going to be detained for a longer period of time, the Israeli officers made MUSEITEF call a taxi for his children to either return to Ramallah or pass through to Tel Aviv alone. Around 2:00 a.m., the soldiers told MUSEITEF that he had an invalid visa and informed him that he was being detained. The soldiers handcuffed and blindfolded MUSEITEF and put him in a trailer near the checkpoint. He was left there, blindfolded and handcuffed, without any food or water, for approximately 11 hours until 1:00 p.m. At 1:00 p.m., MUSEITEF was transported in a military vehicle to border control officers at a checkpoint in the West Bank city of Qalqiliya, still handcuffed. When he approached the Israeli border control officer, MUSEITEF was given his U.S. passport and asked what he was doing there. MUSEITEF explained that the soldiers at the checkpoint would not let him pass and told him his visa was invalid. The officer looked up his passport and visa information in the system. Within one minute, the officer told MUSEITEF that he had a valid visa and there was no reason for them to have stopped him. They then released him from detention, and gave him a release permit to present in order to get his vehicle back, which had been held at the checkpoint. MUSEITEF was not given any other record of the

incident by Israeli authorities. That same week, MUSEITEF reported the incident to the U.S. Embassy via the online incident reporting form.

40.     On July 21, MUSEITEF and a friend who is also a Palestinian-American U.S. citizen with West Bank ID (U.S. RWB according to the MOU), attempted to cross the Na'alin checkpoint to get from the West Bank to Tel Aviv. They showed their U.S. passports with the B2 visas to the soldiers, but were told to present their Palestinian ID cards. The Israeli officers refused to accept their U.S. passports with B2 visa because they are Palestinian ID holders and told them that they were not allowed to enter Israel. MUSEITEF and his friend were taken to a holding room and searched, their vehicle was also searched. After 6 hours, the Israeli officers gave his friend a document with a date for him to go in for questioning with the Shin Bet in Beitunia, and said that he could not leave the country until the interview was done. His friend went in for questioning on the specified date but was told the officer was not available. The friend is still waiting for information.

41.     Plaintiff HAIDAR DARWISH, a Palestinian-American police officer with the New York Police Department (NYPD) who has a West Bank ID, arrived at Ben Gurion Airport on August 14, 2023. When he entered and scanned his U.S. passport on the biometric machine, a 3-month visa was printed for him. Following an initial passport check with an Israeli customs officer, DARWISH was let through. However, when DARWISH went to the Israeli border patrol officer for the final

check before leaving the airport, the Israeli officer took his U.S. passport and visa and asked him where he was going, to which DARWISH replied "Ramallah." The officer asked DARWISH if he had family there, who they were, and how long he was staying. DARWISH stated that his parents lived in the West Bank and that he was planning to stay between a month to a month and a half. The Israeli officer then asked if he had a return flight. DARWISH responded that he did and presented his ticket. The officer asked if he had any other passports. DARWISH told the officer that he has a Palestinian passport. The officer asked if he had it with him, and when DARWISH said no, the officer asked him why not. DARWISH replied that he can enter just on his U.S. passport, as per the rules outlined in the MOU. The officer then told him that he could enter but he was only granting him a visa for one month since his return flight was in one month's time. DARWISH protested, pointing out that on the Israeli border control website, it says that anyone carrying a U.S. passport is entitled to a 3-month visa. The Israeli officer said that it did not matter what was on the website, that he should have brought his Palestinian passport with him, and if he had, he would have given him the 3-month visa. DARWISH asked where it stated that he is required to present his Palestinian passport to get a 3-month visa. The Israeli officer was evasive and would not give a direct answer again claiming that DARWISH should have had his Palestinian passport with him. DARWISH told the officer that he was violating Israel's agreement with the U.S. The Israeli officer said

if he needs to extend his visa, Haidar should go to the U.S. Embassy in Jerusalem to request an extension. However, the U.S. Embassy cannot issue Israeli visas or visa extensions. DARWISH reported the incident via the U.S. Embassy reporting form. On September 15, 2023, DARWISH attempted to cross from the West Bank into Israel with his brother and father, who are both U.S. citizens with West Bank ID and who had Israeli-issued B2 visas. However, DARWISH, his brother and his father were all denied entry at the Hizma and Zaeem checkpoints and told to try the Qalandia checkpoint. At Qalandia, Israeli soldiers told DARWISH that the checkpoint was closed for the Jewish holidays and he could not pass. DARWISH missed his flight and had to go through the same ordeal the following day. DARWISH eventually was allowed to pass through the Qalandiya checkpoint, but only because he also presented his NYPD ID card. DARWISH's brother was not allowed to pass.

42.    On July 30, 2023, ten days after Israel implemented the measures agreed to in the MOU, Plaintiff MOHAMMED AHMED ABUJAYYAB, a U.S. citizen with a Gaza ID, arrived at Ben Gurion Airport from Paris, France. ABUJAYYAB was denied entry into Israel at the airport due to having a Gaza ID. ABUJAYYAB was told by Israeli immigration officials that people from Gaza are not included in the VWP and that there was no alternate route. ABUJAYYAB contacted American Citizen Services at the U.S. Embassy in Jerusalem; he was not

transferred to a duty officer by the operator who did not know how to direct him for assistance. ABUJAYYAB called again and asked for DHS Assistant Secretary Bob Paschall (who at the time was in Israel as part of an observation delegation), and only at that point was he transferred to a duty officer. ABUJAYYAB gave the duty officer his detailed information and the duty officer said he would pass on this information, as there had been multiple reports of such discrimination against Palestinian-Americans. ABUJAYYAB was escorted back through security by Israeli security officers in order to get on a flight back to Paris that they had booked for him, departing at 7:50 a.m. ABUJAYYAB was not given any official written documentation from Israeli officials about the reason he was denied entry. ABUJAYYAB filled out the U.S. Embassy Jerusalem incident reporting form. Before boarding the flight, ABUJAYYAB was given his passport and a document from Israeli authorities addressed to the pilot of the plane containing information about ABUJAYYAB and the requirement to provide transport for him out of the country.

43.   On September 8, 2023, Senator Chris Van Hollen (MD) and Senator Brian Schatz (HI) co-authored a letter signed by 13 other U.S. Senators, addressed to the Secretary of State, raising concerns about the MOU and Israel's potential

entrance into the VWP.[5] The Senators' letter notes: "There is no provision in law that provides that a visa waiver country can discriminate against certain groups of U.S. citizens for the first seven months of the program (i.e., October 1st through April 30th) simply because a country claims they will treat all U.S. citizens equally for the last five months of the fiscal year."[6] The Senators further note, with regard to U.S. RG-designated persons, that "[t]he exclusion of an entire group of U.S. citizens because of their Gaza designation on the Palestinian Population Registry is a clear violation of 'Blue is Blue' and a concerning indication of Israel's failure to implement the reciprocity requirements."[7] The Senators conclude that Israel's "entry into the program cannot come at the expense of the 'Blue is Blue' principle and the requirement of reciprocity for all U.S. citizens."[8]

## CLAIMS FOR RELIEF

### DHS and DOS's Violations of the APA, 5 U.S.C. § 706(2)(A): Arbitrary and Capricious Action

44.    Plaintiffs incorporate and re-allege all preceding paragraphs as if fully set forth herein.

---

[5] September 8, 2023 Letter to Secretary of State Antony Blinken from Senators Chris Van Hollen and Brian Schatz, *available at*: https://www.vanhollen.senate.gov/imo/media/doc/van_hollen_vwp_letter_to_blinken_090823.pdf.

[6] *Id.*

[7] *Id.*

[8] *Id.*

45.    In its July 19, 2023 MOU with Israel concerning reciprocal privileges for U.S. citizens, DHS and DOS agreed to measures Israel would establish for U.S. citizens under the VWP. By agreeing to these measures, DHS and DOS have accepted discriminatory and differential treatment of U.S. citizens that does not meet Congress' requirement for reciprocal treatment.

46.    The MOU signed by DHS and DOS is a final agency action within the meaning of the APA, 5 U.S.C. § 704.

47.    Defendants' signing of the MOU was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A), for at least the following reasons:

(A)    The MOU establishes a different rule for "reciprocal privileges" for U.S citizens, contrary to the VWP statute.

(B)    Neither DHS nor DOS have discretion according to the VWP statute to change the rules of the VWP.

(C)    The establishment of different classes of U.S. citizens is contrary to U.S. laws related to equality of all citizens.

(D)    DHS and DOS took this action despite numerous private sessions and conversations with Palestinian-American community members, legal experts, and Israeli lawyers who explained the mechanisms by which Israel discriminates against Palestinians, regardless of their possession of other citizenships.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Honorable

Court:

1. Declare that the July 19, 2023 MOU signed by DHS and MOU is arbitrary, capricious, and not in accordance with the law;

2. Issue an injunction, preventing Defendant DHS from admitting Israel into the VWP on the unlawful grounds outlined in the July 19, 2023 MOU;

3. Set aside the MOU in its entirety with instructions to uphold the standard of the VWP statute "reciprocal privileges" rule in accordance with how the VWP program operates for all other countries;

4. Declare that DHS and DOS failed to protect the rights of U.S. citizens when traveling under the VWP to Israel;

5. Award Plaintiffs their costs of litigation, including reasonable attorneys' fees, pursuant to 28 U.S.C. § 2412 and 16 U.S.C. §1540(g)(4); and

6. Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

/s/Huwaida Arraf
Huwaida Arraf (NY Bar 4707220)
1394 E. Jefferson Ave.
Detroit, MI 48207
Tel: (313) 567-6170
Email: huwaida.arraf@gmail.com
*Attorney for Plaintiffs*

/s/Samuel W. Jarjour
Samuel W. Jarjour (IN Bar 15468-02)
7824 Coldwater Road
Fort Wayne, IN 46825
Tel: (260) 420-2333
Fax: (260) 420-2335
Email: sam@jarjourlaw.com
*Attorney for Plaintiffs*

Dated: September 26, 2023