**EXHIBIT 1**

## Memorandum of Understanding
## between
## The Government of the State of Israel
## And
## The Government of the United States of America
## On Extension of Reciprocal Privileges and the Visa Waiver Program

The Government of the State of Israel ("Israeli Participant") and the Government of the United States of America ("U.S. Participant") (herein collectively the "Participants"),

Reflecting the long-standing and close relationship between the United States and Israel based on our shared interests and shared values, and in support of shared efforts to advance the Israeli Participant's entry into the U.S. Visa Waiver Program (VWP),

Desiring in this regard to further deepen the close ties and relationship between the United States and Israel based on our shared interests and values by clarifying the extension of reciprocal privileges by Israel to all U.S. citizens and nationals,

The Participants have jointly decided:

**Section 1**

1. The Participants commit to the following principles:

    a. All U.S. citizens and nationals traveling with a U.S. passport (hereinafter "U.S. citizens") are to be recognized by Israel as U.S. citizens[1];

---

[1] The U.S. Participant understands that Israeli law requires a U.S. citizen and national who is also an Israeli citizen to enter and depart Israel on an Israeli passport.  The Israeli Participant has assured the U.S. Participant that it intends that U.S. citizens who were born in, hold nationality in, or have travel documents from another country will be able to travel under VWP consistent with this Memorandum. This assurance includes, but is not limited to, countries Israel considers under its law to be "enemy state" nationalities (Iran, Iraq, Lebanon, Syria), as well as U.S. citizens who were born in, hold nationality in, or have travel documents from Bahrain, Egypt, Jordan, Morocco, South Sudan.

b. All U.S. citizens are to receive equal treatment regardless of national origin, religion, or ethnicity while seeking to enter, exit, or transit through Israel;

c. All U.S. citizens are to be evaluated for entry into Israel under the same standards, consistent with the principles in this Section, and such standards are to be implemented before Israel may be designated as a program country in the VWP; and

d. Recognizing Israel's legitimate security, criminal, health or immigration concerns may provide the basis for denial of visa-free entry into Israel of certain individuals, and noting that our cooperation under the VWP, including our information sharing obligations and commitments, is intended to help address our mutual concerns; nevertheless, security, criminal, health and immigration concerns are not intended to be applied in a manner so as to undermine the principles described in this Section, including equal treatment for U.S. citizens of Arab, Middle Eastern, or Muslim origin.

**Section 2**

1. Any U.S. citizen requesting to enter Israel, for short term travel for a period not exceeding 90 days for nonimmigrant business, tourist, and transit purposes (hereinafter "covered VWP travel"), or any U.S. citizen exiting Israel, may do so via any Israeli port of entry to include Ben Gurion Airport.

2. Israel intends to put into place and implement its "Marom" system, which is to be used in administering all visa-free travel to Israel for all U.S. citizens, including those who reside in the West Bank.  Once in place, as part of the process of entering Israel for covered VWP travel, and as with any other citizen of a foreign country, the U.S. citizen's details are expected to be checked through the Marom system's constituent databases, including relevant security, criminal, health, and immigration sources, before arrival in Israel. While Israel expects Marom to be operational by the end of 2023 (initially on a voluntary basis and then on a mandatory basis no later than May 1, 2024), and subject to internal regulations, the Participants do not intend that delays in the full operation of the Marom system are to impede implementation of this

    Memorandum of Understanding (hereinafter the "Memorandum") or impede covered VWP travel.  To achieve full reciprocity for all U.S. citizens and nationals, the Israeli Participant further understands the U.S. Participant's intent to implement remedial measures should the Marom system not be fully operational and available for all U.S. citizens by May 1, 2024.  Under U.S. law, the Secretary of Homeland Security has broad discretion to undertake remedial measures, including in consultation with the Secretary of State, the suspension or termination a country from the VWP.

3. A U.S. citizen, including an individual listed on the Palestinian population registry, who requests entry into Israel for covered VWP travel is expected to be routinely approved, unless by exception security, criminal, health, or immigration concerns justify a different result based on the uniform application of legal standards established in Israeli law.  In these exceptional cases, the Participants understand that Israel intends to deny the entry of a U.S. citizen who raises security, criminal, health, or immigration concerns and direct the U.S. citizen to seek a visa or permit for travel to Israel.  Similarly, it is understood that Israel may revoke a given permit if information raising security, criminal, health, or immigration concerns is found or received during the duration of the permit.

4. Any U.S. citizen who enters Israel for covered VWP travel may travel throughout Israel, and may also enter and exit the West Bank, subject to the same standards and treatment applied to all U.S. citizens.[2]

5. The Participants understand that the principles and commitments in this Memorandum supersede all applicable Coordinator of Government Activities in the Territories (COGAT) rules and regulations including those concerning entry into the West Bank by U.S. citizens who also are seeking entry into Israel for covered VWP travel.

**Section 3**

1. For further clarity, the Participants understand that the principles and the commitments described in Section 1 and Section 2 of this Memorandum apply to all U.S. citizens, including those listed on the Palestinian population registry. The Participants intend to facilitate implementation of this Memorandum

---

[2] The U.S. Participant understands that the Israeli participant also refers to the West Bank as Judea and Samaria.

using an interim process for a U.S. citizen who is a Resident of the West Bank (U.S. RWB), as described in paragraph 2 of this Section.  The interim process is to expire by May 2024, at which time the Marom system described in Section 2 is to be fully operational and available to all U.S. RWB.  The Participants understand that expiration of the interim process described in this Section does not prevent a U.S. RWB from choosing to use the process described in this Section in lieu of the Marom system even after that system is fully operational.

2. To this end, the Israeli participant intends that covered VWP travel of U.S. RWB proceed in a manner that is consistent with that of all other U.S. citizens.  At such time as the Marom system is operational and integrated with the COGAT system, as described in Section 2, paragraph 2 of this Memorandum, and becomes operational for covered VWP travel, the Marom system is to be available to U.S. RWB.  Prior to the Marom system being operational, the U.S. RWB who requests entry to enter Israel for covered VWP travel by applying for a permit through an online application (app) maintained by COGAT or in person through established systems. The Israeli Participant intends that a U.S. RWB will only need the COGAT permit (and biometric U.S. passport) to enter Israel, and while the COGAT biometric card may facilitate entry into Israel, it will not be required of a U.S. RWB.

3. The U.S. RWB's request for covered VWP travel using the COGAT app is to be reviewed consistent with the principles and commitments described in Sections 1 and 2 of this Memorandum, and is expected to be approved, except in the exceptional circumstances described in Section 2, paragraph 3 of this Memorandum.  The U.S. RWB is to be issued a permit to travel throughout Israel for covered VWP travel, which is to be valid for as long as their U.S. biometric passport is valid for multiple entries for covered VWP travel, including to re-enter Israel at any port of entry.  In the exceptional case that a U.S. RWB is denied entry for covered VWP travel, the Israeli Participant intends to inform the U.S. RWB of this decision consistent with its commitments in Section 2, paragraph 3 of this Memorandum, including direction on how to seek a visa or permit for entry.  The Israeli Participant does not intend that the process set forth in this section affect West Bank entry and exit via Allenby Bridge. The Israel Participant intends that a U.S. citizen traveling under a U.S. passport who wishes to cross the Allenby Bridge with the intent to enter Israel

is to be allowed to do so for covered VWP travel consistent with this Memorandum.

4. The Participants share concerns regarding travel to Gaza given current security threats but recognize that U.S. citizens reside there. When entry points between Israel and Gaza become accessible for routine travel, the Participants intend U.S. citizens may travel from Gaza to Israel for covered VWP travel consistent with the principles and commitments set out in this Memorandum and in a manner consistent with all other U.S. citizens. Until such time as covered VWP travel is possible, the Participants have described in Annex B the parameters for facilitating travel to and from Gaza.

5. The Participants understand that this Memorandum may be implemented without any need for changes in Israeli primary legislation or U.S. law.[3] The U.S. Participant intends that Israeli citizens traveling to the United States also will be treated in a manner consistent with the principles and commitments set out in this Memorandum.

## Section 4

1. The principles and commitments described in this Memorandum are understood to be consistent with the Participants' national laws, policies, and international obligations. Nothing in this Memorandum is intended to apply to principles and commitments not otherwise addressed in this Memorandum, to include Israel's requirements for activating lockdown of its borders or regulations applicable to use of Israeli vehicles and vehicle transit.

2. The Participants understand that the U.S. Participant is statutorily required to evaluate the effect of each program country's initial and continued designation in the VWP and determine whether any such designation should continue. Further, the U.S. Participant is statutorily required to submit a written report to the U.S. Congress on the status of the designation on U.S. national security, law enforcement, and immigration interests. To this end, as set out in Annex A, the Participants are to document and review consistent application of the Israeli Participant's commitments under this Memorandum.

---

3 The U.S. Participant understands that for Israel to activate the Marom system the Israeli Participant requires a change to its laws to collect the biometrics of foreign travelers and is in the process of considering such legislation.

3. Participation under this Memorandum commences upon signature by the Participants.

4. Understanding this Memorandum is integral to Israel's participation in the VWP, and that the implications for Israel's potential failure to meet the VWP reciprocity requirement are described in Annex A, either Participant may discontinue implementation of this Memorandum at any time but is expected to provide at least 30 days written notice to the other Participant.

5. Nothing in this Memorandum is intended to give rise to rights or obligations under domestic or international law.

Signed at _____, on _____, in duplicate in the English language.

FOR THE GOVERNMENT OF THE
STATE OF ISRAEL:

FOR THE GOVERNMENT OF THE
UNITED STATES OF AMERICA:

Annex A
Evaluating Implementation of the Memorandum of Understanding
between
The Government of the State of Israel
And
The Government of the United States of America
On Extension of Reciprocal Privileges and the Visa Waiver Program

Israel's participation in the Visa Waiver Program (VWP) means it will extend reciprocal privileges to all United States citizens and nationals, just as the United States extends to the citizens of all VWP countries ("reciprocity").  The United States and Israel have clarified their commitments regarding reciprocity in a U.S.-Israel Memorandum of Understanding (MOU) on the Extension of Reciprocal Privileges and the Visa Waiver Program.  This Annex to the MOU sets out measures for implementing and evaluating the MOU:

**Measures to Support Implementation and Evaluation of the MOU**

1) **Israel Finalizes and Publishes New Travel Regulations and Standard Operating Procedures (SOPs), and Confirms Officers Receive On-going Training in these Regulations and SOPs**:  Prior to nomination in the VWP, the GOI publishes on a public-facing website its revised travel regulations that detail its implementation of the MOU and provides U.S. travelers with access to these updated regulations.  The GOI continuously maintains these regulations and SOPs after designation; the GOI confirms that officers receive on-going training in these regulations and SOPs.
   a. Travel Regulations: Israel issues and publishes, including on the websites of the Israeli embassy and Israeli consulates in the United States, new travel regulations reflecting the commitments in the MOU, to include an explicit statement of the core principles set out in Section 1 of the MOU.  Israel's regulations state that discrimination – the unfavorable treatment of a person, or group of persons, based on several factors which can include their national origin, religion, or ethnicity – is unacceptable. These regulations detail the application of Section 2 and Section 3 of the MOU for short term travel to Israel.  The regulations specify that a U.S. citizen who requests entry into Israel for covered VWP travel is expected to be routinely approved, unless by exception security, criminal, health, or

      immigration concerns, justify a different result based on the uniform application of legal standards established in Israeli law.
   b. <u>SOPs</u>: GOI develops, promulgates, and implements new standard operating procedures for Israeli officials working at ports of entry and crossing points regarding the commitments set out in the MOU that detail how such officials will implement the updated travel regulations.  Israel translates and shares the updated SOPs with the USG in English.
   c. <u>Training</u>: GOI develops, distributes, and continuously implements training materials for Israeli officials working at ports of entry and crossing points regarding the updated travel regulations and SOPs, to include training that assists officials in meeting the GOI commitments set out in the MOU. Israel shares its training materials with the USG in English and confirms on-going training.

2) **<u>Israel Reports Relevant Statistics to the United States</u>**: The GOI shares essential statistics at twice-yearly intervals to validate actual travel to Israel under the VWP and implementation of the commitments in the MOU. Additionally, the GOI, in cooperation with U.S. Embassy Jerusalem, facilitates random spot checks of traveler data concerning denials of travel under the VWP and the reasons for denial from a selected time period, e.g., a particular day or week.  To share this data, Israel takes the following steps:
   a. <u>General Travel Statistics</u>:  The GOI requires the competent agencies to report to a central authority relevant statistics on travel under the VWP, including denials of applications for entry, visas, or other travel authorizations.
   b. <u>Port of Entry Denial Statistics</u>:  The GOI requires the competent agencies to report to a central authority relevant statistics, including persons referred or detained for enhanced screening, questioning, or examination on entry and exit via ports of entry controlled by the Israeli government including at a land border, seaport, a land crossing, or at Ben Gurion or Ramon Airport.
   c. <u>Reporting to the United States</u>:
      i. If a U.S. citizen traveler is denied due to public security concerns related to serious crime or terrorism, the GOI provides relevant information to the USG with urgency, through appropriate channels at U.S. Embassy Jerusalem.
      ii. The GOI provides to the USG a report containing data on travel under the VWP that lists the total number of VWP travelers and the total number of

      denials (prior to travel and at entry). Data contained in the report is further broken down into the wide range of categories under which the travelers were denied, and whether they were denied entry at a land border, seaport, a land crossing, or at Ben Gurion or Ramon Airport.  To assess implementation of Section 3 of the MOU, the GOI should also include data on the denials of entry of U.S. RWBs, including at West Bank crossings into Israel, and the denials of COGAT permits to U.S. RWBs.

   iii. The GOI provides U.S. Embassy Jerusalem with an audit of its denials of travel under the VWP six months and 18 months after designation into the VWP.  At a minimum, this audit includes a breakdown of the traveler type (age range, gender, place of birth, and reason(s) for denial of covered VWP travel over the past year).  Raw data might be requested by the U.S. Participant on an ad hoc basis to include port-of-entry, gender, date of birth, and other citizenships, and the Israeli Participant intends to provide it in a manner consistent with Israeli law.  The Israeli Participant understands that the U.S. Participant intends to collect personally identifiable information such as the gender, age, nationality, name and date of birth, or passport number of U.S. citizens as part of the voluntary reporting described in paragraph 3 of this Annex.

d. <u>During application process for authorization for visa free travel (once implemented)</u>:  The GOI processes all travel authorization applications under the VWP within a set timeframe (e.g., one week/24 hours.); and

   i. If denied visa-free travel, Israel provides U.S. citizens the opportunity to seek a visa or permit.

   ii. The GOI includes data related to processing timelines in the bi-annual report as described above.

e. <u>During application process for visa free entry into Israel:</u>

   i. If denied, GOI provides traveler notice explaining grounds for denial via a standard form as well as options available for seeking administrative and/or judicial redress to overcome the denial.

   ii. The GOI commits to processing all U.S. citizen applications within a set timeframe (e.g., one week) and providing data to verify this is occurring; and

f. <u>At a port-of-entry</u>:

   i. If denied, Israel provides all U.S. citizens a notice of denial.  This notice should explain that the citizen has been denied entry.   The relevant GOI official offers to provide the contact information for U.S. Embassy

       Jerusalem for the traveler to inform the U.S. Embassy if they wish and provides options for judicial or administrative redress.

3) **U.S. Citizen Reporting to the USG**: The U.S. Embassy maintains a reporting option where U.S. citizens who believe they may have been denied a visa, permit or entry to Israel or subjected to discriminatory treatment (the unfavorable treatment of a person, or group of persons, based on several factors which can include their national origin, religion, or ethnicity) at an Israeli port of entry may report details of the encounter to the U.S. Embassy, for follow up as appropriate and tracking of trends.

4) **Observational Period for Implementation:** To evaluate Israel's implementation of the MOU prior to nomination to the VWP, the GOI demonstrates that it is fully implementing the MOU and has taken the above steps to that end. As part of its evaluation, the USG requests a report from the GOI containing information on the total denials, including the reason for the denial, and approvals of U.S. citizens on a weekly basis during the observation period. The Israeli Participant intends to provide this information, to include at least the following information: place of birth, port-of-entry, other citizenships. The Israeli Participant understands that the U.S. Participant intends to collect personally identifiable information such as the gender, age, nationality, name and date of birth, or passport number of U.S. citizens as part of the voluntary reporting described in paragraph 3 of this Annex.

5) **Future Changes to Reciprocity Verification:** As necessary, the U.S. government may modify how it measures and assesses implementation of the MOU.

### Consequences of Non-Compliance with VWP Reciprocity

Following admission to the Visa Waiver Program, should the GOI fail to implement the MOU on Extension of Reciprocal Privileges, the GOI would no longer meet U.S. VWP program requirements as established in U.S. law. The U.S. government intends to review implementation of the MOU and this Annex – to include data collected by Israel and shared with the United States, publication of the regulations and SOPs, and conformation of on-going training – during its regular VWP review as described in Section 4 of the MOU. Remedial measures that DHS, in consultation with the U.S. State Department, may take in response to a failure

to meet the VWP statutory requirement include, but are not limited to, placing GOI on provisional status in the VWP, reduction of the ESTA validity period of all Israeli travelers, suspension of the GOI from the VWP, or termination of the GOI from the VWP.

**Annex B**

**to the Memorandum of Understanding
between
The Government of the State of Israel
And
The Government of the United States of America
On Extension of Reciprocal Privileges and the Visa Waiver Program**

As described in Section 3, paragraph 4 of the Memorandum, the security environment currently prevents routine travel between Gaza and Israel.  For its part, the U.S. Participant notes its current published travel warning to all U.S. citizens.  In light of the Participants' current security concerns, this Annex is intended to describe travel facilitation process for U.S. Residents of Gaza (U.S. RG).  This process is applicable under current security conditions, and is without regard to covered VWP travel by all U.S. citizens, including those listed on the Palestinian population registry, as further described in the Memorandum.  Nothing in this Annex is intended to prevent or restrict a U.S. RG located outside of Gaza from applying to enter Israel for covered VWP travel consistent with the Memorandum.

The Israeli Participant intends that the Erez border crossing will not be available to U.S. citizens for covered VWP travel at this time.  Until such time as covered VWP travel is routinely possible from Gaza to Israel, the Israeli Participant intends that a U.S. RG may nonetheless, consistent with the process described in Section 2, paragraph 3 of the Memorandum for the exceptional case of a U.S. citizen denied entry for VWP covered travel due to security, criminal, health, or immigration concerns, apply for a visa or permit for the purposes of short term travel for business, tourism, or transit to Israel through Erez.  Acknowledging the unique security environment in Gaza, the U.S. Participant understands that Israel will conduct a robust security review of such U.S. RG applicants, similar to the process through which Gazans are permitted to enter Israel through Erez on worker permits, and each application will be adjudicated on a case-by-case basis.

If denied for a permit or visa to enter Israel through Erez, a U.S. RG traveler seeking to travel into and out of Gaza is to submit an application to the PA to travel to a third state and return to Gaza.  The PA is to forward the application to COGAT through an interface that exists between them.  Any such travel is to

take place through the Allenby Bridge.  The application is to be forwarded to the Israeli side at least 45 days before the requested departure date and the Israeli Participant intends to approve such requests, subject to security review.

The Israeli Participant intends to provide to the United States data on approvals and denials, including the reason for the denial, of U.S. RG requests for travel facilitation from a third state to Gaza and from Gaza to a third state through this process, as well as U.S. RG applications for permits and visas to enter Israel through Erez for short term travel for business, tourism, or transit.  This information may include: numbers of approvals and denials, U.S. passport number or name and date of birth, age, and other citizenships.

The Israeli Participant also intends that a U.S. citizen with family ties of the first degree[4] to a Gaza resident may apply for a visit permit to enter Gaza.  Such application is to be submitted through the COGAT website.  The Israeli Participant intends that the application specify the family relative the applicant intends to visit and their family relations.  The Israeli Participant intends to examine each application on a case-by-case basis.  If approved, the U.S. citizen applicant is to receive a tourist permit that would allow the individual a single entry to Gaza, for a period of up to 90 days.  The Israeli Participant intends that a U.S. citizen may apply for such a tourist permit once a year.

The Participants intend to modify this Annex through mutual decision in writing as security conditions improve.

---

[4] Family ties of the first degree include: parents, siblings, and children.